UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

VERTRELL PARKER,

        Plaintiff,

   -v-                               No.  14CV5327-LTS

WORKMEN'S CIRCLE CENTER OF THE BRONX,
INC., WORKMEN'S CIRCLE DIALYSIS CENTER,
INC., & JOPAL BRONX, LLC,

        Defendants.

-------------------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiff Vertrell Parker ("Plaintiff") brings this action against her former

employers, Workmen's Circle Center of the Bronx, Inc., Workmen's Circle Dialysis Center,

Inc., and Jopal Bronx, LLC (collectively, "Defendants").  Plaintiff asserts gender discrimination,

retaliation and hostile work environment claims under Title VII of the Civil Rights Act of 1964

("Title VII"); the New York State Human Rights Law ("NYSHRL"), codified at New York

State Executive Law § 296;[1] and the New York City Human Rights Law ("NYCHRL"), codified

---

[1]     Because "both the Human Rights law and [T]itle VII address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery," Title VII and NYSHRL claims are analyzed under the same standard.  Matter of Aurecchione v. N.Y. State Div. of Human Rights, 771 N.E.2d 231, 233 (N.Y. 2002). Therefore, for the purposes of this Memorandum Opinion and Order, Plaintiff's claims under the NYSHRL and Title VII will be analyzed together.   See also, Cortes v. New York City, 700 F. Supp. 2d 474, 489 (S.D.N.Y. 2010) ("The merits of New York state and local law discrimination claims are generally evaluated under the same framework as claims brought under Title VII . . . Accordingly, the foregoing discussion of the sufficiency of Plaintiff's Title VII claims governs the disposition of his state and local law claims as well.").

at N.Y.C. Admin. Code § 8-101 et seq.; as well as New York state common law causes of action

for negligent retention and hiring and a claim for interference with protected rights under the

NYCHRL.  Plaintiff asserts that the Court has jurisdiction of this case pursuant to 28 U.S.C. §§

1331 and 1367.

Defendants move to dismiss the Complaint in its entirety, pursuant to Federal

Rules of Civil Procedure 12(b)(1) and 12(b)(6), asserting that the Court lacks subject matter

jurisdiction of this action and that Plaintiff has failed to state a claim upon which relief may be

granted.  The Court has thoroughly considered all of the parties' submissions.  For the following

reasons, Defendants' motion is granted in part and denied in part.


BACKGROUND[2]

On or about May 1, 2013, Plaintiff began working for Defendants as a Certified

Clinical Hemodialysis Technician.  (Compl. ¶ 17.)  Shortly thereafter, Plaintiff's male

supervisor, Nikata Mclean ("Mclean") began sexually harassing her.  (Id. ¶ 18.)  Over the course

of several months, Mclean asked Plaintiff out on multiple dates (id. ¶ 19) and regularly

scheduled Plaintiff to work the night shift so that she would be forced to stay late with him.  (Id.

¶ 23.)  On an almost daily basis, Mclean brushed up against her and made sexual noises (id. ¶

22), and asked Plaintiff for naked pictures of herself.  (Id. ¶ 25.)

On or about September 16, 2013, Plaintiff went to the Human Resources

department to complain about Mclean's behavior.  (Id. ¶ 26.)   While Plaintiff was at the Human

Resources department, Mclean called her cellular phone in an attempt to locate her.  (Id. ¶ 27.)

---

[2]      The facts recited herein are drawn from the Complaint ("Compl.") in this action
(see Docket Entry No. 1), and are assumed to be true for the purposes of the
instant motion practice.  Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Upon learning that she was at Human Resources, he stated, "if you don't get back here it's not going to be good for you."  (Compl. ¶ 27.)  Plaintiff, however, remained at the Human Resources office and followed through with her complaint about Mclean.  (Id. ¶ 29.)

Following the filing of her complaint with Human Resources, Defendants' Vice President of Operations Matthew Varghese ("Varghese") directed Plaintiff to go home, telling her that she would be paid for the day.  (Id. ¶ 30.)  Varghese further stated that he would let Plaintiff know "when it was safe for her to return to work."  (Id. ¶ 30.)  The following day, Varghese called Plaintiff and told her that an investigation into her allegations was being opened, and that she would be able to return to work the following week.  (Id. ¶ 31.)  On or about September 20, 2013, an individual who worked with Varghese called Plaintiff and told her that the investigation had found no evidence supporting her allegations.  (Id. ¶ 32.)  Plaintiff was then informed that her employment was being terminated.  (Id.)

Plaintiff filed a claim with the EEOC on January 15, 2014.  (Id. ¶ 5.)  On June 5, 2014, the EEOC issued Plaintiff a right-to-sue letter, and Plaintiff filed her complaint in this action on July 15, 2014.  (Id. ¶¶ 6-7.)

DISCUSSION

Defendants' Rule 12(b)(1) Motion to Dismiss For Lack of Subject Matter Jurisdiction

Defendants move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this action for lack of subject matter jurisdiction.  Despite citing this rule as a basis for their motion, however, Defendants fail to identify any grounds for their assertion that the Court lacks subject matter jurisdiction of this case.  Given that Plaintiff has pleaded facts establishing federal question jurisdiction pursuant to 28 U.S.C. § 1331 (see Compl. ¶¶ 2, 3, 41-47), and

supplemental jurisdiction of her state and city law claims pursuant to 28 U.S.C. § 1367 (see

Compl. ¶¶ 2, 48-68), Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(1) is

denied.

Legal Standards Governing Defendants' 12(b)(6) Motion to Dismiss

   Defendants further move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to

dismiss this action for failure to state a claim upon which relief may be granted.  When

considering a Rule 12(b)(6) motion, the Court accepts as true all non-conclusory factual

allegations in the complaint and draws all reasonable inferences in the plaintiff's favor.  Roth,

489 F.3d at 501.  To survive such a motion, the complaint must "contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A court is not, however, required to accept "conclusory statements" made by the plaintiff as true,

nor do "legal conclusion[s] couched as factual allegation[s]" merit such deference.  Twombly,

550 U.S. at 555.

   When analyzing a claim of discrimination at the motion to dismiss stage, a court

must bear in mind that the plaintiff "need not plead a prima facie case of discrimination."

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  In light of the heightened pleading

standard imposed by Twombly and Iqbal, the Second Circuit has held that, "while a

discrimination complaint need not allege facts establishing each element of a prima facie case of

discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory

factual matter sufficient to 'nudge its claims' . . . 'across the line from conceivable to plausible'

to proceed."  EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (quoting

Iqbal, 556 U.S. at 680.)).

The Second Circuit's recent decision in Littlejohn v. City of New York, 795 F.3d 297 (2d Cir. 2015), seeks to reconcile the more relaxed discrimination pleading standard set out in Swierkiewicz with the heightened pleading requirements of Iqbal within the burden-shifting context established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.[3] In Littlejohn, the Second Circuit reasoned that,

> Iqbal's requirement applies to Title VII complaints of employment discrimination, but does not affect the benefit to plaintiffs pronounced in the McDonnell Douglas quartet.  To the same extent that the McDonnell Douglas temporary presumption reduces the facts a plaintiff would need to show to defeat a motion for summary judgment prior to the defendant's furnishing of a non-discriminatory motivation, that presumption also reduces the facts needed to be pleaded under Iqbal.

See Littlejohn, 795 F.3d at 310 (emphasis in original).  The Second Circuit therefore concluded that, absent direct evidence of discrimination, to survive a motion to dismiss a discrimination claim a plaintiff must plausibly allege facts in the complaint tending to demonstrate that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) she has minimal factual support for the proposition that the employer was motivated by discriminatory intent.  See id. at 311.  These facts need not give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination.  They need only give  plausible support to a minimal inference of

---

[3]     In McDonnell Douglas and its progeny, the Supreme Court set out the plaintiff's burden of proof for establishing a prima facie case of discrimination – namely that a plaintiff must show: (1) that she is a member of a protected class; (2) that she was qualified for employment in the position sought; (3) that she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.  See 411 U.S. at 142.

<u>discriminatory motivation</u>."  <u>Littlejohn</u>, 795 F.3d at 311 (emphasis supplied).


<u>Defendant's Reliance on Documentary Evidence</u>

In reviewing a Rule 12(b)(6) motion to dismiss, a court may consider only the factual assertions made within the four corners of the complaint.  <u>Gregory v. Daly</u>, 243 F.3d 687, 691 (2d Cir. 2001).  However, when applicable, Rule 10(c) of the Federal Rules of Civil Procedure permits a court "to include [in its analysis] any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in [the complaint] by reference."  <u>Cortec Industries, Inc. v. Sum Holding, L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991) (citing <u>Comas v. Hassett</u>, 886 F.2d 8, 13 (2d Cir. 1989)).  Courts in this district require the complaint to make "a clear, definite and substantial reference to the documents" for any documents to be deemed incorporated by reference.  <u>Helprin v. Harcourt, Inc.</u>, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003).  Where a plaintiff has neither referenced nor attached additional documents to the complaint, her claims are reviewed based solely upon the factual allegations of the complaint.  <u>See</u> <u>id.</u>

Here, Defendants assert that, because Plaintiff was aware of certain statements made by witnesses and the contents of her employee personnel file prior to bringing suit, she has "relied on" – and therefore incorporated by reference – certain documentary evidence.  (<u>See</u> Memorandum of Law in Support of Defendants' Rule 12 Motion to Dismiss Plaintiff's Complaint ("Def. Memo") at pp. 4-5, Docket Entry No. 13, Exs. A-D.)  Defendants themselves rely heavily upon these allegedly incorporated documents in arguing their motion, but identify no basis for an inference that Plaintiff did so in framing her Complaint.  For this reason, the Court will not examine any of the documentary evidence attached to the Defendants'

Memorandum, and any arguments relying on such evidence will not be credited.

Plaintiff's Retaliation Claims

Plaintiff alleges that Defendants have discriminated against her in retaliation for reporting her supervisor's alleged inappropriate behavior.  Title VII provides that it is an unlawful employment practice for an employer "to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful practice by [Title VII]."  42 U.S.C.S. § 2000e-3(a) (LexisNexis 2014).  In order to prevail under a theory of retaliation, a plaintiff must show that: (1) she participated in a protected activity; (2) her employer knew of the activity; (3) she suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  Sletten v. LiquidHub, Inc., No. 13CV1146-NRB, 2014 WL 3388866, at *4 (S.D.N.Y. Jul. 11, 2014).

Plaintiff alleges that she was fired in retaliation for complaining to Human Resources about Mclean, as indicated by the mere four-day gap between her complaint and the termination of her employment.  Plaintiff has clearly alleged that she participated in a protected activity (see Compl. ¶¶ 26, 29); that her employer knew of the activity (see id. ¶¶ 30-31); and that she suffered an adverse employment action.  (See id. ¶ 33).  She has further alleged that the adverse employment action was the product of her exercise of a protected right.  (See id. ¶¶ 34-35.)

Defendants challenge Plaintiff's retaliation claims only with respect to the fourth element, arguing that Plaintiff has not properly alleged causation.  Defendants first argue that the Complaint must be dismissed because Plaintiff has failed to demonstrate but-for causation – the standard of proof established by the Supreme Court's holding in University of Texas Southwest

<u>Medical Center v. Nassar</u>, 133 S. Ct. 2517 (2013), in the Complaint.[4]  This argument is misplaced for several reasons.  Although proof of but-for causation is necessary for making out a discrimination claim at the trial stage, as was the case in <u>Nassar</u>, it is not necessary at the pleading stage, where "the allegations in the complaint need only give <u>plausible</u> <u>support</u> to the reduced prima facie requirements that arise under <u>McDonnell Douglas</u> in the initial phase of a Title VII litigation."  <u>See</u> <u>Littlejohn</u>, 795 F.3d at 316 (emphasis supplied).  Furthermore, courts in the Second Circuit have made it clear that, when the individual who has taken an adverse employment action against an employee has also acknowledged that employee's exercise of a protected right, the inference of causation is stronger than when two different defendant actors are involved in the alleged retaliation scheme.  <u>See</u> <u>Leshinsky v. Televent GIT, S.A.</u>, 942 F. Supp. 2d 432, 450 (S.D.N.Y. 2013) ("[T]he fact that one of the persons responsible for Plaintiff's termination knew of the protected activity provides the jury with sufficient evidence to find that Plaintiff's report was a proximate cause of his termination.")  Plaintiff's allegations that Varghese both acknowledged the claim that Plaintiff made to Human Resources (<u>see</u> Compl. ¶¶ 31-32) and later participated in the decision to terminate her (<u>see</u> <u>id.</u> ¶ 32) therefore give rise to a strong inference of causation with respect to Plaintiff's retaliation claim.

Finally, it is well established in the Second Circuit that temporal proximity is indicative of a causal relationship between a protected activity and an adverse employment action.  <u>See</u>, <u>e.g.</u>, <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 217 (2d Cir. 2001) (causal relationship demonstrated when plaintiff was fired 20 days after her employer learned that she had hired an

---

[4]     The Court in <u>Nassar</u> held that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . [which] requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  133 S. Ct. at 2533.

attorney to pursue a gender discrimination claim).  In cases such as this, where the adverse

employment action took place only days after the plaintiff's participation in a protected activity,

courts have held that it is appropriate to infer a causal connection.  See e.g., Treglia v. Town of

Manlius, 313 F.3d 713, 721 (2d Cir. 2002) (temporal proximity of one month between protected

activity and adverse employment actions "is sufficient to establish the required causal link for a

prima facie case"); McGrory v. City of New York, No. 99CV4062-FM, 2004 WL 2290898, at *7

(S.D.N.Y. Oct. 8, 2004) (one or two month period is "clearly sufficient" to establish a causal

connection).  Here, Plaintiff has alleged that she was terminated only four days after her

complaint to Human Relations (see Compl. ¶¶ 30-33), and that she was effectively terminated by

an individual who knew of her complaint to the Human Resources department.  (See id. ¶¶ 31-

32.)  Plaintiff has thus pleaded sufficient facts to "give plausible support" to an inference of

causation, satisfying the fourth element of the retaliation inquiry.  Defendants' motion to dismiss

Plaintiff's Title VII and NYSHRL retaliation claims is therefore denied.[5]


Plaintiff's Disparate Treatment and Hostile Work Environment Claims

        Plaintiff further alleges that she was discriminated against on the basis of her

gender and that she was subjected to a hostile work environment.  Title VII makes it unlawful

for "an employer . . . to discriminate against any individual with respect to his compensation,

---

[5]        Where a plaintiff has sufficiently pleaded discrimination claims under federal and
        state law (i.e., under Title VII and the NYSHRL), courts have consistently held
        that the plaintiff has also met the pleading standards "under the more liberal
        provisions of the NYCHRL."  Galanis v. Harmonie Club of the City of New
        York, No. 13CV4334-LTS-AJP, 2014 WL 101670, at *6 (S.D.N.Y. Jan. 10,
        2014).  Accordingly, the Court also denies Defendants' motion to dismiss
        Plaintiff's NYCHRL claims.

terms, conditions, or privileges of employment, because of such individual's . . . sex."

42 U.S.C.S. § 2000e-2(a)(1) (LexisNexis 2014).

*Gender Discrimination*

To state a claim for gender discrimination under Title VII, a Plaintiff must plead

facts tending to demonstrate: (1)  that she is a member of a protected class; (2) that she was

qualified for the position she held; (3) that she suffered an adverse employment action; and (4) at

least minimal support for the proposition that the employer was motivated by discriminatory

intent.  See Littlejohn, 795 F.3d at 311.  Plaintiff has clearly alleged that she is a member of a

protected class, in that she is a woman (see Compl. ¶ 8), and that she suffered an adverse

employment action.  (See id. ¶¶ 32-35.)  Plaintiff further alleges that she would not have been

harassed by Mclean had she not been female.  (See id. ¶¶ 34-36, 44.)

Defendants challenge Plaintiff's discrimination claim on the fourth element,

suggesting that, while Plaintiff may have alleged claims for retaliation and/or hostile work

environment under Title VII (which they nonetheless dispute), Plaintiff has not alleged any facts

in support of her claim that she was fired because of her sex.  The Court disagrees.  Plaintiff has

plainly alleged that her interactions with Mclean were permeated with sex-based harassment,

requests and innuendo.  (See Compl. ¶¶ 18-25, 29.)  "It is . . . beyond peradventure that sexual

harassment is a form of prohibited gender discrimination."  Petrosky v. New York State Dept. of

Motor Vehicles, 72 F. Supp. 2d 39, 56 (N.D.N.Y. 1999) (citing Oncale v. Sundowner Offshore

Servs., Inc., 523 U.S. 75 (1998)).  Thus, the Court understands Plaintiff to have alleged that she

was targeted and treated differently on account of her gender.  (See also Compl. ¶ 36.)

Defendants appear to argue that a legitimate basis for Plaintiff's termination

exists in that she "fail[ed] to perform her job" and engaged in multiple acts of "insubordination"

relative to her supervisor, Mclean, that were documented in negative performance reports.  (See Def. Memo at p. 1.)  Presumably such reports were created, at least in part, by the supervisor whose sexual advances Plaintiff repeatedly rebuffed, i.e., Mclean.  (See Compl. ¶¶ 29, 35.)  In her briefing, Plaintiff vociferously disputes the veracity of these reports.  (See Plaintiff's Memorandum of Law in Opposition to Defendants' Rule 12 Motion to Dismiss Plaintiff's Complaint ("Plaintiff Memo") at pp. 9-10.)  The Court thus finds that Plaintiff's allegation that she consistently rebuffed Mclean's sexual advances provides minimal support for the proposition that her termination was motivated by discriminatory intent, as it raises the inference that the negative performance reports were generated as a result of Plaintiff's reaction to Mclean's unwelcome advances.  (See Plaintiff Memo at pp. 11-12.).  Had there been no (allegedly false) reports placed in Plaintiff's file – reports presumably issued on the basis of Plaintiff's negative reaction to Mclean's gender-based discrimination against her – Defendants would have had no allegedly legitimate nondiscriminatory basis for her termination.  Thus, the Court finds that Plaintiff has pleaded facts sufficient to frame the requisite minimal inference of discriminatory intent required at the pleading stage by the Second Circuit in Littlejohn.  The Court therefore denies Defendants' motion insofar as it seeks dismissal of Plaintiff's Title VII and NYSHRL gender-based disparate treatment claims.[6]

*Hostile Work Environment*

A plaintiff asserting a Title VII hostile work environment claim "must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive – that is, . . . [it] creates an environment that a reasonable person would find hostile or abusive; (2)

---

[6]      For the reasons discussed in Note 5, supra, the Court also denies Defendants' motion with respect to Plaintiff's NYCHRL gender discrimination claim.

creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3)

creates such an environment because of the plaintiff's sex."  Patane v. Clark, 508 F.3d 106, 113

(2d Cir. 2007) (citing Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)).  Plaintiff has

clearly satisfied each of these elements.  Plaintiff alleges that, "on an almost daily basis, Mclean

. . . brush[ed] against Plaintiff and [made] sexual noises."  (Compl. ¶ 22.)  She also claims that

"on an almost daily basis," Mclean requested that Plaintiff send him naked photographs of

herself (id. ¶ 25) and that Mclean regularly scheduled Plaintiff to work night shifts with him.

(Id. ¶ 23.)  Plaintiff further alleges that, in the aggregate, Mclean's inappropriate behavior caused

her to feel "extremely humiliated, degraded, violated, embarrassed and emotionally distressed"

(id. ¶ 37), and that the harassment that created a hostile work environment would not have

existed but for her sex.  (See id. ¶ 36.)

        Defendants argue that the facts alleged in the Complaint are insufficient to

demonstrate that Mclean's actions were objectively severe or pervasive.  In analyzing this factor,

a court will examine "the totality of the circumstances" which includes "the frequency of the

discriminatory treatment and its severity, whether the abuse was physical or mere verbal insult,

and the extent to which the conduct interfered with the plaintiff's ability to perform at work."

Cortes, 700 F. Supp. 2d at 485.  Furthermore, a court may consider whether the conduct "is

threatening and humiliating, or a mere offensive utterance."  Patane, 508 F.3d at 113.  The

Second Circuit has cautioned courts against "setting the bar too high" when evaluating a hostile

work environment claim.  See, e.g., Terry v. Ashcroft, 336 F.3d 128, 148 (2d. Cir. 2003).

        Given the physical and vocal nature of Mclean's alleged behavior, as well as the

alleged consistency and frequency of his actions, the Court finds that Plaintiff has pleaded facts

indicating that the harassment she faced was sufficiently severe and pervasive to survive

Defendants' motion to dismiss. See, e.g., Cruz v. New York State Dept. of Corrections and Community Supervision, No. 13CV1335-AJN, 2014 WL 2547541, at *4 (denying defendant's motion to dismiss where plaintiff alleged that his "supervisor made almost-daily comments for over three years, remarking upon his physical appearance, gender, and sexual attractiveness while smiling seductively, and implying sexual intent," that he believed "such comments had crossed the line," and that it was plausible that such comments were made because of Plaintiff's sex); Tenny v. Essex County/Horace NYE Home, 05CV0506-GLS-DRK, 2006 WL 126766, at *5 (N.D.N.Y. Jan. 17, 2006) ("Here, the gravamen of [plaintiff's] hostile work environment claim is her contention that she was subjected to glares, gossip, and snickers at work following the controversy surrounding her undergarments. While the objective severity of this treatment minimally meets the standard and might not survive a summary judgment motion, it is sufficient at [the motion to dismiss] stage"). Accordingly, the Defendants' motion to dismiss Plaintiff's hostile work environment claims is denied.


Plaintiff's Claim for Interference with a Protected Right Under the NYCHRL

Title Eight of the New York City Administrative Code – the New York City Human Rights Law – makes it "an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section." N.Y.C. Admin. Code § 8-107(19). While Plaintiff's Complaint does not clearly specify the nature of the interference or the relevant protected right, in circumstances where a court has found that plaintiff has plausibly alleged discrimination or retaliation claims, a

claim for unlawful interference under the NYCHRL, "as a further extension of these claims[,] . . . should not be dismissed outright without the benefit of further judicial proceedings." Instead, the validity of the claim should "be determined through discovery and further court proceedings." <u>Mariotti v. Alitalia-Linee Aeree Italiane Societa Per Azioni</u>, 2008 N.Y. Slip Op. 32160(U), at *13 (N.Y. Sup. Ct. 2008). Because the Court has determined that Plaintiff has alleged plausible discrimination and retaliation claims, Plaintiff's interference claim under the NYCHRL will not be dismissed at this stage.

<u>Plaintiff's Negligent Hiring and Retention Claim</u>

In their opening brief, Defendants argue that Plaintiff's negligent hiring and retention claim should be dismissed as barred by Section 29 of the New York's Workers' Compensation Law, quoting the section of the statute that provides that "[t]he right to compensation or benefits under this chapter shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ." <u>See</u> N.Y. Workers' Comp. Law § 29(6) (McKinney 2015). (<u>See</u> <u>also</u> Def. Memo pp. 10-11.) Plaintiff has offered no legal argument in opposition to this element of Defendants' motion. The Court therefore grants this aspect of Defendants' motion.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is granted with respect to Plaintiff's New York state law claim for negligent hiring and retention.  Defendants' motion is denied in all other respects.

This Memorandum Opinion and Order resolves Docket Entry Number 12.

An initial pretrial conference will be held in this matter on **Friday, October 23, 2015, at 11:30 a.m.**  The parties are required to consult with each other in advance and prepare a joint preliminary pretrial statement one week in advance of this conference, in accordance with the Initial Conference Order (Docket Entry No. 5).

SO ORDERED.

Dated: New York, New York
      September 29, 2015

                                    __/s/ Laura Taylor Swain__
                                    LAURA TAYLOR SWAIN
                                    United States District Judge